IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
**MICHELLE DUBREY,**               :
    **Plaintiff,**            :
        **v.**                :     **CIVIL ACTION NO. 11-4679**
                                   :
**SEPTA, et al.,**                 :
    **Defendants.**           :
_____:

**MEMORANDUM OPINION AND ORDER**

**Rufe, J.**                                                **September 16, 2014**

      Plaintiff filed suit against her employer, Defendant Southeastern Pennsylvania Transportation Authority (SEPTA), and individual SEPTA employees, alleging employment discrimination based on race and illegal retaliation. After some claims were dismissed, Plaintiff was granted leave to amend the complaint to add new evidence and claims. The Second Amended Complaint added new factual allegations in support of her hostile work environment and retaliation claims against SEPTA (Count III), and used those new factual allegations as the basis for new claims (Counts IV and V) against additional Defendants James Jordan (SEPTA's general counsel during the relevant events) and Francis Cornely (another SEPTA employee) in their individual capacities. The new claims allege that Mr. Jordan and Mr. Cornely created a hostile work environment, illegally retaliated against Plaintiff for filing a civil rights lawsuit against SEPTA, and conspired to commit civil rights violations. Before the Court is Defendants' Motion for Summary Judgment, which Plaintiff has opposed.[1]

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

      Except where otherwise noted, the parties have stipulated to the following material facts. Plaintiff, who is African-American, is an employee of Defendant SEPTA. From 1994 until 2000,

---
[1] Doc. No. 52.

she worked as a bus operator. On April 19, 2000, she was promoted to the position of Trial Preparation Specialist in SEPTA's Legal Department. In that role, she reported to the Trial Preparation Supervisor, Anthony Sheridan, for a period of time. Plaintiff and Mr. Sheridan were supervised by Eileen Katz, SEPTA's former Deputy Counsel-Litigation. Plaintiff's performance evaluations indicated that she was meeting expectations in her role as Trial Preparation Specialist. Plaintiff supervised Jodi Strickland, another African-American woman, who worked first as a Process Server and later as a Docket Clerk, both "B" payroll (hourly) positions.

The parties dispute whether Mr. Sheridan treated Plaintiff in a racially discriminatory manner, creating a hostile work environment, and the substance of any complaints Plaintiff made about Mr. Sheridan to her supervisors. Defendants do not dispute that Plaintiff was reassigned to the position of receptionist from 2003 to 2006, and that Ms. Strickland was assigned many of Plaintiff's prior duties (and received "backfill pay" for this work) during this time. Defendants do dispute whether this reassignment was, as Plaintiff avers, a *de facto* demotion in retaliation for her complaints of racial discrimination by Mr. Sheridan.

Mr. Sheridan retired on April 1, 2011, and Ms. Strickland assumed some of his duties; however, Mr. Sheridan's position was never posted or filled after his retirement, as he resumed performance of his responsibilities, as a retired employee, in July 2011.

On Friday, January 14, 2011, at Ms. Katz's request, Plaintiff presented a requisition to SEPTA's Claims Department for rush payment on a claim. Defendant Francis Cornely heads the Claims Department. The parties dispute precisely what took place after Plaintiff presented that requisition, but seem to agree that Mr. Cornely expressed to Plaintiff his anger over requests for "rush" treatment of claims. After that conversation, Plaintiff filed an internal complaint with SEPTA's Office of Equal Employment Opportunity/Affirmative Action and Employee Relations

("EEO Office") on January 18, 2011. That complaint contained no mention of a racial element to the disputed encounter.[2] The complaint was assigned to Employee Relations Manager Thomas Comber, who recommended a meeting between Plaintiff and Cornely to discuss the complaint.[3] This meeting was held on March 10, 2011.[4]

On June 5, 2011, Plaintiff filed a second complaint with the SEPTA EEO, complaining about a memo dated April 21, 2006, written to Ms. Katz by Mr. Sheridan, which Plaintiff had just come across on a co-worker's computer.[5] This complaint also did not mention race or race-based discrimination.[6]

On June 21, 2011, Plaintiff sent a letter to SEPTA's general manager, Joe Casey, in which she stated that Mr. Cornely had been asked to apologize to her for the anger he expressed in January 2011, but he refused to do so.[7] She went on to say "If I were of Tom's persuasion then I bet he would apologize. He will not apologize to the little black girl."[8] SEPTA takes the position that Plaintiff spontaneously referred to herself as "the little black girl," whereas Plaintiff asserts that she overheard Cornely referring to her using that phrase.

On July 26, 2011, Plaintiff filed this lawsuit, and on October 20, 2011 she filed an Amended Complaint. Defendants filed a Motion to Dismiss the Amended Complaint, which was

---

[2] See Plaintiff's Exh. 1.

[3] Pl.'s Exh. 3.

[4] See Pl.'s Exh. 7.

[5] Pl.'s Exh. 9.

[6] *Id.*

[7] Pl.'s Exh. 11.

[8] Pl.'s Exh. 11.

granted in substantial part.[9] However, the § 1983 claims against SEPTA for race discrimination and retaliation survived.[10]

In September 2011, Defendant Jordan became General Counsel for SEPTA. On August 23, 2012, under Mr. Jordan's division leadership, Plaintiff was promoted through a competitive bid process to the position of FELA Claims Investigator in SEPTA's Legal Department, and received a significant (nearly 18%) pay increase.

On February 23, 2013, Mr. Jordan sent an email to several employees in his chain of command, scheduling a staff meeting. The meeting was held on March 1, 2013. The meeting was attended by Plaintiff, Mr. Jordan, Ms. Zubras, Mr. Jamison, Ms. Daly, Ms. Lyons, and Ms. Jenkins (all Legal Department employees), and Mr. Cornely, a Claims Department employee and named Defendant in Plaintiff's lawsuit. The March 1, 2013 meeting lasted approximately one hour.

The parties have disputed the purpose, substance, and tone of the March 1, 2013 meeting called by Mr. Jordan, but Defendants admit that during that meeting, Mr. Jordan turned to Plaintiff and said he could not understand why, in her deposition testimony, she had said that Mr. Cornely was racist, and asked her if she wished to comment or discuss that opinion at the meeting.[11] Plaintiff declined to speak.

After the meeting, Plaintiff moved the Court for leave to file a Second Amended Complaint, seeking to amend her claims to include new facts regarding the email sent by Jordan to schedule the Legal Department staff meeting and details about that March 1, 2013 staff

---

[9] *See* Order dated July 2, 2012 (Doc. No. 12).

[10] *Id.*

[11] Def. Reply Brief at 14, citing Pl. Exh. L (Jordan Dep.) at 47.

meeting, and to assert additional legal claims.[12] The Court permitted Plaintiff to amend the complaint to add new factual allegations and to assert claims against newly added Defendants Cornely and Jordan.[13] The claims currently before the Court are a § 1983 race discrimination and retaliation claim against SEPTA; a §1983 hostile work environment and retaliation claim against Mr. Cornely and Mr. Jordan in their individual capacities; and a § 1985(2) claim against Mr. Jordan and Mr. Cornely in their individual capacities, for conspiracy to intimidate a witness.

## II.   STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if "the materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."[15] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[16] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[17]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[18] Further, a court may not weigh the evidence or make credibility determinations.[19] Nevertheless,

---

[12] Doc. No. 36.

[13] Memorandum Opinion and Order dated July 23, 2013 (Docs. Nos. 41 and 42).

[14] Fed. R. Civ. P. 56(a), (c)(1).

[15] *Miller v. Ind. Hosp.,* 843 F.2d 139, 143 (3d Cir. 1988).

[16] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[17] *Id.*

[18] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[19] *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[20] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[21] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[22] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[23]

**III.    DISCUSSION**

    A.    Retaliation Claims

To state a *prima facie* claim for retaliation under § 1981 and § 1983, Plaintiff must establish: 1) that she engaged in protected speech or opposed unlawful discriminatory conduct; 2) that Defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising her rights; and 3) that there was a causal connection between the protected activity and the retaliatory action.[24] The burden then shifts to Defendants, who "may defeat the claim of retaliation by showing that it would have taken the same action even if the plaintiff had not engaged in protected activity."[25] Finally, Plaintiff has the opportunity to rebut Defendants' alternative explanations, or demonstrate that they are pretextual.[26]

---

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[21] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[22] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976)).

[23] *Celotex*, 477 U.S. at 322; *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[24] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[25] *Id.*

[26] *Id.*

Plaintiff alleges two acts of retaliation. Plaintiff asks the Court to consider the evidence that Ms. Katz allegedly demoted Plaintiff in 2003, together with the evidence that Mr. Jordan, ten years later, confronted Plaintiff about an ongoing lawsuit against SEPTA during a staff meeting, as evidence of a well-established custom and practice within SEPTA of engaging in retaliatory conduct which violates employees' civil rights. However, the conduct of Ms. Katz and Mr. Jordan lacks similarity and is too remote in time to be indicative of a custom or practice having the force of law. Thus, the Court must consider SEPTA's potential liability for the two acts separately. The Court must also address Mr. Cornely and Mr. Jordan's individual liability for the second alleged act of retaliation.

   1.   *Count III (Against SEPTA)*

First, Plaintiff alleges that she was *de facto* demoted from Trial Preparation Specialist to Receptionist from 2003-2006, although she did not suffer a change in title or pay, after complaining about race-based harassment by Mr. Sheridan. She was reassigned by Ms. Katz, who at the time was deputy general counsel. Defendant argues that: 1) Plaintiff did not complain about race-based discrimination by Mr. Sheridan, but only expressed general "gripes" about her supervisor; 2) there was no adverse or retaliatory action, as Plaintiff's title and salary remained unchanged when she was assigned to receptionist duties; and 3) this claim is only against SEPTA, which cannot be held liable for the acts of its employees under *Monell*.[27, 28]

As it is dispositive, the Court will address only the last argument. In order to impose liability on a municipal entity, such as SEPTA, a plaintiff must prove that the challenged action was taken pursuant to official policy or practice so persistent and widespread as to have the force

---

[27] *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).

[28] In its briefing on this Motion, SEPTA did not argue that Plaintiff's allegations about her *de facto* demotion are time barred by the applicable statute of limitations. *See also* Note 53, *supra*.

7

of law, that the action was taken by policy-making officials or individuals with policy-making authority, or that the action was ratified by the agency after it occurred.[29]

With regard to her alleged *de facto* demotion, Plaintiff has not pointed to any official policy,[30] or persistent and widespread practice of reassigning employees who make complaints of harassment or discrimination. She does not point to evidence that Mr. Sheridan or Ms. Katz are policy-making officials or have policy-making authority. Plaintiff puts forth no evidence that she contemporaneously complained to general counsel, the SEPTA EEO office, or the board of directors that her reassignment was an act of illegal retaliation. And Plaintiff fails to point to evidence that the alleged retaliatory reassignment was ratified by SEPTA after the fact.[31] And Accordingly, the Count III retaliation claim against SEPTA must be dismissed.

2. *Count IV (Against Mr. Cornely, Mr. Jordan, and SEPTA)*

After Plaintiff filed this lawsuit (protected activity), Plaintiff alleges that further acts of retaliation occurred, and she filed a Second Amended Complaint, in 2013, to add facts and claims. Plaintiff asserted that a February 23, 2013 email from Mr. Jordan, and the March 1, 2013 meeting over which he presided, were acts of retaliation against her for filing her employment discrimination lawsuit on July 20, 2011, giving her deposition on January 30, 2013, taking Mr. Cornely's deposition on February 7, 2013, and seeking other discovery. The retaliation claim in Count IV is brought against Mr. Cornely, Mr. Jordan, and SEPTA.

---

[29] *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006).

[30] In fact, Plaintiff argues that her *de facto* demotion violated at least two official SEPTA policies. Specifically, Plaintiff argues that after her reassignment to the receptionist desk, her prior duties were assumed by her former subordinate, Ms. Strickland, who was not promoted but who was granted "backfill pay" to perform duties that Plaintiff remained available and willing to fulfill, in violation of SEPTA's Compensation policy. Plaintiff also argues that she was required to serve as the receptionist for approximately three years, in violation of a SEPTA policy that precluded her from working outside of her duties as Trial Preparation Specialist for more than one year.

[31] The evidence indicates that SEPTA learned of Ms. Strickland's backfill pay from this time period during an audit in 2010, and Ms. Strickland was required to pay back some of the backfill pay she had received. This suggests that SEPTA did not endorse or ratify the department managers' relevant decisions.

The factual record before the Court reflects that Mr. Jordan sent an email to his staff on February 23, 2013, which scheduled March 1, 2013 department meeting, and which read, in relevant part: "The key issues will be whether we, as a Legal Department and as a group within that Department, can move forward rather than remain obsessed with the past, whether we can act as professionals and understand that we can play a valuable—but not irreplaceable—role in moving SEPTA forward, and how pettiness can be minimized, if not eliminated."[32] Then, at that March 1, 2013 meeting, Mr. Jordan challenged why Plaintiff would bring this discrimination and retaliation lawsuit, and why she would believe Mr. Cornely was racist when Mr. Jordan, a white man, did not.

In an earlier opinion, the Court held that, if events occurred as alleged, the February 23, 2013 email from Mr. Jordan, in which he noted that department employees were "not irreplaceable," together with the March 1, 2013 staff meeting, at which Mr. Jordan critically discussed claims Plaintiff raised and the testimony Plaintiff gave in ongoing litigation in front of her Legal Department colleagues, as well as a defendant in that ongoing litigation, Mr. Cornely (who was not a member of the Legal Department), may have had the effect, or been intended to have the effect, of chilling Plaintiff's participation in the ongoing litigation. Now, there is record evidence supporting the allegations that the comments Mr. Jordan directed to Plaintiff in that meeting challenged both her participation in this litigation and her deposition testimony.[33] In addition, a lawyer in the Legal Department testified that Mr. Jordan told her, immediately after the March 1 meeting, that he was not going to tolerate lawsuits against SEPTA,[34] and later told

---

[32] Pl.'s Exh. 48.

[33] Pl.'s Exh. O, DuBrey Decl. ¶¶34-38; Pl's Exh. J, Zubras Dep. at 28-32.

[34] Pl.'s Exh. J at 43-44.

9

her, apparently in reference to Plaintiff, "remember, I don't get mad; I get even."[35] Thus, the Court finds a genuine issue of material fact for the jury as to whether Plaintiff's protected activity motivated Mr. Jordan's actions, and whether those actions constituted illegal retaliation.

Plaintiff also alleged a retaliation claim against Mr. Cornely, for his conduct during the March 1, 2013 meeting.[36] For the reasons set forth below in the Court's discussion of Plaintiff's conspiracy claim, although it is clear that Mr. Cornely said nothing at the March 1, 2013 meeting, the Court holds that there is a genuine issue of material fact as to whether Mr. Cornely personally participated in planning the alleged act of retaliation.

Finally, Plaintiff argues that SEPTA can be held liable for the actions of Mr. Jordan, pursuant to *Monell*,[37] because Mr. Jordan was general counsel for SEPTA and a member of SEPTA's board of directors at the time, and as such, was a person with policy-making authority who actions can be attributed to SEPTA.[38]

The Court recognizes that an official with policy-making authority can create official policy by rendering a single decision under appropriate circumstance.[39] "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action [taken]"[40] and "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible

---

[35] *Id.* at 50.

[36] Proposed Second Am. Compl. ¶¶57- 60.

[37] *Monell,* 436 U.S. at 694.

[38] Plaintiff also argues that Mr. Jordan's actions can be attributed to SEPTA under Monell because Mr. Jordan was never subjected to any disciplinary action by SEPTA for engaging in this conduct, despite the fact that his conduct violated well established rules of Professional Conduct for attorneys. The Court need not reach this argument.

[39] *Pembaur v. Ciy of Cincinnati*, 475 U.S. 469, 480 (1986) (noting that even isolated acts of a municipality's properly constituted legislative body unquestionably constitute acts of official government policy).

[40] *Id.* at 481.

for establishing final policy with respect to the subject matter in question."[41] Plaintiff has pointed to evidence indicating that SEPTA conferred on Mr. Jordan, in his role as general counsel, the authority to set policy with regard to the workplace treatment of employees who sue SEPTA or other SEPTA employees. In his deposition, Mr. Jordan states: "As general counsel, I have the primary responsibility for the operations of the SEPTA Legal Division, overseeing the attorneys and the other legal professionals."[42] One with operational authority does not necessarily have policy-making authority. However, Nicholas Staffieri, who served as general counsel for SEPTA prior to Mr. Jordan, testified that, as general counsel, he was responsible for policy decisions for the Legal Department, and he was charged with enforcing SEPTA's anti-discrimination and anti-retaliation policies within that division of SEPTA.[43] As Plaintiff has put forth evidence that SEPTA conferred upon Mr. Jordan the responsibility for making and enforcing SEPTA's anti-retaliation policies within his division, and actions taken by those with policy-making authority can be attributed to SEPTA itself,[44] the Court will not dismiss the Count IV retaliation claims asserted against SEPTA.

    B.    Hostile Work Environment Claims

"In order to establish a claim for employment discrimination due to an intimidating or offensive work environment, a plaintiff must establish, 'by the totality of the circumstances, the existence of a hostile or abusive *environment* which is severe enough to affect the psychological stability of a minority employee.' Specifically, a plaintiff must show: (1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3)

---

[41] *Id.* at 483.

[42] See Pl.'s Exh. L, Jordan Dep. at 12.

[43] Pl.'s Exh. I, Staffieri Dep. at 12-13.

[44] *Pembaur*, 475 U.S. at 484, n. 12.

the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability."[45]

1.	*Count III (Against SEPTA)*

In Count III, Plaintiff alleges that Mr. Sheridan and Mr. Cornely created a hostile work environment, for which SEPTA is liable under *Monell.*

First, Plaintiff testified that her supervisor, Mr. Sheridan, clearly did not care for her, and created a hostile work environment by gratuitously referring to her race in conversations,[46] constantly criticizing her, including calling her a "know-it-all"[47] and other derogatory names, and otherwise causing her "hurt, shame, [and] humiliation"[48] for years. "There are no talismanic expressions which must be invoked as a condition-precedent to the application of laws designed to protect against discrimination. The words themselves are only relevant for what they reveal— the intent of the speaker."[49] A speaker's racially discriminatory intent may be inferred from context and tone.[50] The Court holds that Plaintiff has established a genuine issue of material fact as to whether Mr. Sheridan's statements to Plaintiff carried a "distinct tone of racial motivations and implications," and evidence racially discriminatory bias.

As to whether SEPTA can be held liable for Mr. Sheridan's actions, Plaintiff testified that she complained to her supervisor, Ms. Katz, about perceived race-based harassment from Mr.

---

[45] *Aman v. Cort Furniture Rental Corp*. 85 F.3d 1074, 1081 (3d Cir. 1996) (internal citations omitted).

[46] Pl.'s Exh. A, Dubrey Dep. at 40-41.

[47] *Id.* at 42.

[48] *Id.*

[49] *Aman v. Cort Furniture Rental Corp.*, 85 F.3d at 1083.

[50] *See Id.* at 1082 (noting that discrimination is often "masked in more subtle forms" and civil rights laws tolerate "no racial discrimination, subtle or otherwise," and holding that a reasonable jury could infer that remarks referring to minority employees using terms such as "another one," "one of them," and "all of you," were inherently racist.)

Sheridan, in 2001. In response, she indicates, SEPTA changed her direct supervisor but did not otherwise take action against Mr. Sheridan, who continued to talk to her in a derogatory and condescending manner over the next 11 years. Plaintiff complained to Ms. Katz again in 2002, and says she also complained to General Counsel Nicholas Staffieri, periodically from about 2003-2009.[51] Plaintiff testimony regarding the substance and frequency of her complaints to supervisors is somewhat lacking in specificity, but as Plaintiff testified that she complained many times to General Counsel Mr. Staffieri, to whom SEPTA had delegated authority to set policy for his department and enforce anti-discrimination laws and policies,[52] the Court finds that Plaintiff has established a genuine issue of material fact as to SEPTA's liability for Mr. Sheridan's conduct, under the framework described in *Monell*.[53]

With regard to Mr. Cornely, in Count III Plaintiff points to evidence that, in 2011, Mr. Cornely yelled at her in a disrespectful manner, refused to apologize (per Mr. Jordan's advice), and possibly called Plaintiff "the little black girl" or "poor black girl." Plaintiff filed a SEPTA EEO complaint. Although that complaint did not unambiguously state that Mr. Cornely referred to Plaintiff as a "little black girl," the Court holds that it was sufficient to put SEPTA on notice that Plaintiff believed there was a racially motivated component to Mr. Cornely's actions. Plaintiff has put forth evidence that this Complaint did not result in an apology or any other remedial action. Judge Jones, who presided over the case until 2013, dismissed Plaintiff's claims

---

[51] Pl.'s Exh. A at 45-46; 51-52.

[52] Pl.'s Exh. I at 12-13.

[53] Defendant did not renew its earlier-raised argument that Plaintiff's allegations about Mr. Sheridan are time barred by the applicable statute of limitations, although it is not clear that Judge Jones's order addressed this particular argument. As this issue has not been briefed, the Court will not address it in this opinion, but does note that the Third Circuit recognizes the continuing violation doctrine. *Mandel v. M & O Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (a court may consider the entire scope of the hostile work environment claim so long as any act contributing to that claim took place within the statutory time period).

against Mr. Cornely individually,[54] but did not dismiss Count III as to SEPTA. Now, the Court holds that Plaintiff may rely upon evidence of Mr. Cornely's 2011 actions in attempting to prove SEPTA's liability for a hostile work environment.

### 2. Count IV (Against Mr. Cornely, Mr. Jordan, and SEPTA)

Turning to the hostile work environment claim set forth in Count IV of the Complaint, Plaintiff's evidence in support of her claim that Mr. Jordan and Mr. Cornely created a hostile work environment for which they can be held liable in their individual capacities consists of Mr. Jordan's February 2013 email scheduling the March 1, 2013 staff meeting, and the meeting itself, during which Plaintiff's participation in this lawsuit and her testimony that Mr. Cornely was a racist was challenged by Mr. Jordan. For purposes of this Motion, the Court must credit Plaintiff's account of these events and their effect on her. However, as isolated incidents are generally insufficient to establish a hostile work environment claim,[55] the Court cannot find that the email and staff meeting are sufficient to support a hostile work environment claim against either individual Defendant. Plaintiff has failed to point to evidence indicating that Mr. Jordan or Mr. Cornely's actions with regard to this meeting created a workplace permeated with race-based discrimination sufficiently severe to alter the conditions of her employment.[56]

However, the Court will allow Plaintiff to put forth evidence regarding general counsel Mr. Jordan's email, and his words and conduct during the 2013 staff meeting, in support of her claim that SEPTA is liable for the allegedly racially hostile work environment created by its employees.

---

[54] See Order dated July 2, 2012 (Doc. No. 12). After the case was transferred to this Judge, the Court granted leave to further amend, but did not disturb Judge Jones's ruling on the Motion to Dismiss the Amended Complaint. See Memorandum Opinion and Order dated July 23, 2013 (Doc. No. 41 and 42).

[55] *Pollack v. City of Phila.,* No. 06-4089, 2008 WL 3457043, at *8 (E.D. Pa. Aug. 8, 2008).

[56] *Carver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005).

C. Conspiracy Claims against Cornely and Jordan

Section 1985(2) prohibits two or more persons from conspiring to "deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully . . . ."[57]

As a threshold matter, under § 1985, Plaintiff must plead that two or more persons conspired.[58] Where two individuals are employees of the same government authority, they cannot conspire among themselves or with their employer in their official capacities.[59] They can conspire with one another only in their individual capacities.[60] The evidence indicates Mr. Cornely was invited to the March 1, 2013 Legal Department staff meeting, although he was not a member of the Legal Department, during which he grinned while Mr. Jordan challenged Plaintiff's claims in the pending litigation against SEPTA and specifically challenged her deposition testimony regarding Mr. Cornely's discriminatory conduct towards her, and that Mr. Cornely seemed to enjoy watching Mr. Jordan humiliate Plaintiff. There is no direct evidence of a conspiracy between Mr. Cornely and Mr. Jordan to retaliate against Plaintiff for litigating her employment discrimination action, but the Court finds that Plaintiff has adduced sufficient circumstantial evidence that the two men acted in concert to create a genuine issue of material fact as to that element.

Section 1985(2) prohibits two or more persons from conspiring to "deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such

---

[57] 42 U.S.C. § 1985(2).

[58] The existence of a conspiracy is a threshold issue for a claim under either §1985(2) or (3). Heffernan v. Hunter, 189 F.3d 405, 412 n. 4 (3d Cir. 1999).

[59] *Suber v. Guinta*, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012) (collecting cases); *Poli v. SEPTA*, No. 97-6766, 1998 WL 405052, at *13 (E.D. Pa. July 7, 1998).

[60] *Novotny v. Great American Fed. Sav. & Loan Ass'n*, 584 F. 2d 1235, 1238 (3d Cir. 1978); *Poli,* at *14.

court, or from testifying to any matter pending therein, freely, fully, and truthfully . . . ."[61] The Court holds that the email characterizing employees as "not irreplaceable," considered together with remarks made by General Counsel Mr. Jordan at the subsequent meeting regarding Plaintiff's participation and testimony in this lawsuit, may have had the effect, or been intended to have the effect, of deterring Plaintiff's participation in the ongoing litigation. In addition, Plaintiff has put forth evidence that Mr. Jordan told a legal department colleague that he would not tolerate suits against SEPTA and would "get even." The Court finds sufficient evidence of Mr. Jordan's intent to deter Dubrey's participation in this suit to create a genuine issue of material fact as to Plantiff's § 1985 claim.

## IV.    CONCLUSION

For the reasons set forth above, the Court grants the Motion for Summary Judgment as to the retaliation claims against SEPTA set forth in Count III of the Second Amended Complaint, and the hostile work environment claims against Cornely and Jordan set forth in Count IV of the Second Amended Complaint, and denies the motion with regard to all other claims.

---

[61] 42 U.S.C. § 1985(2).